**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CREGORY COLE and KIMBERLY ENRIGHT, on behalf of themselves and all others similarly situated, | CASE NO. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| FCA US LLC and STELLANTIS N.V., | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Cregory Cole and Kimberly Enright ("Plaintiffs"), on behalf of themselves and all other similarly situated members of the below-defined classes they respectfully seek to represent (collectively, the "Class"), allege against Defendants FCA US LLC ("FCA US") and Stellantis N.V. ("Stellantis") (collectively, "Defendants"), upon personal knowledge as to the factual allegations pertaining to themselves and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.       INTRODUCTION

1.      This case concerns Defendants' deceptive and unfair practice of misleading consumers into overpaying for their vehicles by inflating the amount customers must pay for the delivery of their vehicles (*i.e.*, the "destination fee") when purchasing or leasing a new vehicle at one of Defendants' authorized dealerships.

2.      A vehicle's "destination fee" is generally understood in the automotive industry to reflect the manufacturer's average cost of delivering one of its vehicles to a dealership. That destination fee is charged to the dealer and passed on to the purchaser or lessee of that vehicle.

Consumers similarly have the expectation that they are covering an automotive manufacturer's cost for the delivery of the manufacturer's vehicles when paying the "destination fee" as part of their new-vehicle lease or purchase.

3. The same is true for the "destination fee" at issue here, which Defendants refer to as the vehicle's "Destination Charge." Since at least 2015, Defendants have added the "Destination Charge" to the price of each new Chrysler-, Dodge-, RAM-, Jeep-, and FIAT-branded vehicle that has been offered for sale in the United States (the "Class Vehicles"). Unfortunately for consumers, the amount of Defendants' Destination Charge increased sharply over the years and currently sits at a whopping $1,495.00 per Class Vehicle.

4. Defendants disclose the Destination Charge, along with other essential pricing information, on the window sticker of each Class Vehicle ("Monroney sticker"), and require that the specific amount of the "Destination Charge" be passed through to consumers, who are not allowed to negotiate the amount as part of the Class Vehicle's overall price. As a result, consumers who desire to purchase or lease one of Defendants' vehicles are forced to pay the exorbitant Destination Charge and do so based on the belief that it is a legitimate charge directly related to the cost of delivering the Class Vehicle.

5. Despite the general understanding of the automotive industry and the reasonable expectations of consumers, however, Defendants include a significant amount of profit in their Destination Charge and, in doing so, deceive customers into paying far more than the actual cost of vehicle delivery when purchasing or leasing one of the Class Vehicles.

6. In fact, Defendants' Destination Charge has little correlation to the cost of delivering the Class Vehicles to their intended destination (*i.e.*, Defendants' dealerships) at all, and instead, has become a huge profit center for Defendants. Indeed, the Destination Charge allows

Defendants to extract hidden markups on the sale of the Class Vehicles from unsuspecting consumers.

7.    As a direct and proximate result of Defendants' concealment of and failure to disclose the profit that is included in the Destination Charge, Plaintiffs overpaid for their Class Vehicles.  Plaintiffs have purchased and leased Class Vehicles that they would not otherwise have purchased or leased, or would have paid less for, had they known that Defendants' Destination Charge was not a legitimate charge related to the cost of delivery the Class Vehicles to their dealers at the point of sale.  Plaintiffs have consequently suffered ascertainable losses and actual damages as a result of Defendants' unlawful conduct.

8.    Accordingly, Plaintiffs, on behalf of themselves and the Class of similarly situated purchasers and lessees of the Class Vehicles seek damages and restitution to recover the inflated amounts paid to Defendants as part of their Destination Charge, as well as injunctive relief to prevent Defendants from continuing their wrongful conduct, as alleged herein.

## II.    JURISDICTION AND VENUE

9.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than Defendants.

10.    The Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting business activities in the State of New York.

11.    Venue is proper in this District, pursuant to 28 U.S.C. §1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated

3

within this District, Defendants have marketed, advertised, sold, and leased the Class Vehicles in this District, and Defendants have caused harm to one or more Plaintiffs residing in this District.

### III.   PARTIES

#### A.   Plaintiffs

12.   Plaintiff Cregory Cole (for the purpose of this section, "Plaintiff") is a citizen of New York, residing in Hempstead, New York.  Plaintiff purchased a new 2018 Jeep Wrangler (for the purpose of this section, the "Class Vehicle") on April 21, 2020, at Garden City Jeep Chrysler Dodge Ram, one of Defendants' authorized dealers located in Hempstead, New York.

13.   Prior to purchasing the Class Vehicle, Plaintiff viewed the Class Vehicle's Monroney sticker, including the $1,495.00 amount represented by Defendants as the "Destination Charge" for the Class Vehicle.

14.   Plaintiff reasonably believed that the $1,495.00 Destination Charge represented Defendants' cost to deliver the Class Vehicle to Garden City Jeep Chrysler Dodge Ram, and further understood that the Destination Charge was a pass-through cost that he was required to pay and unable to negotiate as part of the Class Vehicle's overall price.

15.   Defendants failed to disclose that they had included profit in the Destination Fee, and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that profit was not included in the Destination Charge.

16.   Plaintiff reasonably relied to his detriment on Defendants' representation regarding their $1,495.00 Destination Charge and their subsequent omissions regarding the true nature of the Destination Charge, which had been inflated with profit.

17.   Plaintiff has been damaged by Defendants' material representations and omissions

regarding the Destination Charge for his Class Vehicle in that he overpaid for his vehicle by paying the full $1,495.00 amount of the Destination Charge when purchasing his Class Vehicle.

18.    Plaintiff Kimberly Enright (for the purpose of this section, "Plaintiff") is a citizen of New Jersey, residing in Winfield Park, New Jersey.  Plaintiff purchased a new 2019 Jeep Grand Cherokee (for the purpose of this section, the "Class Vehicle") on June 5, 2019, at Seaview Chrysler Dodge Jeep Ram, one of Defendants' authorized dealers located in Ocean Township, New Jersey.

19.    Prior to purchasing the Class Vehicle, Plaintiff viewed the Class Vehicle's Monroney sticker, including the $1,495.00 amount represented by Defendants as the "Destination Charge" for the Class Vehicle.

20.    Plaintiff reasonably believed that the $1,495.00 Destination Charge represented Defendants' cost to deliver the Class Vehicle to Seaview Chrysler Dodge Jeep Ram, and further understood that the Destination Charge was a pass-through cost that she was required to pay and unable to negotiate as part of the Class Vehicle's overall price.

21.    Defendants failed to disclose that they had included profit in the Destination Fee, and Plaintiff, therefore, purchased her Class Vehicle on the reasonable, but mistaken, belief that profit was not included in the Destination Charge.

22.    Plaintiff reasonably relied to her detriment on Defendants' representation regarding their $1,495.00 Destination Charge and their subsequent omissions regarding the true nature of the Destination Charge, which had been inflated with profit.

23.    Plaintiff has been damaged by Defendants' material representations and omissions regarding the Destination Charge for her Class Vehicle in that she overpaid for her vehicle by paying the full $1,495.00 amount of the Destination Charge when purchasing her Class Vehicle.

**B.    Defendants**

24.    FCA is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan.  FCA designs, engineers, manufacturers and sells vehicles under the Chrysler, Jeep, Dodge, RAM, and Fiat brands.  FCA was the North American arm of Fiat Chrysler Automobiles N.V., until its merger with Peugeot S.A., when it became a wholly-owned subsidiary of Stellantis.

25.    Stellantis is a multinational auto manufacturer, which was formed as a result of the merger of Fiat Chrysler Automobiles N.V. and Peugeot S.A. in 2020.  Stellantis is a publicly traded corporation organized and existing under the laws of, and with its principal place of business in, the Netherlands.  As a result of the merger, Stellantis has become the fourth largest automaker by volume and third by revenue in the world.

## IV.    FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

26.    Defendants deceive consumers regarding the costs of shipping their vehicles by adding a deceptively-named "Destination Charge" to each of their automobile sales.

27.    By labeling the fee a "Destination Charge," Defendants lead reasonable consumers to believe the "charge" reflects the cost for delivering the vehicle to its "destination."  By virtue of the name of the fee itself, Defendants mislead reasonable consumers into believing its "Destination Charge" reflects the actual cost of shipping vehicles to their "destination," not the cost of shipping the vehicle *plus* profit.

28.    Defendants' price stickers break out the Destination Charge separate and apart from the base MSRP and include it as an add-on. With this chicanery, the vehicle itself appears less expensive, and Defendants' artificial "Destination Charge" can be used as a vessel for profit that would otherwise appear in the cost of the vehicle.

29.    But despite its name, the "Destination Fee," has little to do with getting the vehicle to its intended destination, and the name of the fee is itself a misrepresentation to shoppers.

30.    Simple math shows this is true.  While fuel and shipping costs have remained fairly constant over the last decade, the increase in Defendants' Destination Charges during that same period has been astronomical.  A recent study by Consumer Reporters revealed that Destination Charges rose an average of 90 percent on Chrysler-, Dodge-, and Jeep-branded vehicles since 2012.  Destination Charges also rose 74 percent on RAM trucks since 2011, and 114 percent on Fiat-branded vehicles since 2012.  The charges on the Jeep Cherokee, specifically, rose to $1,495 in 2019, up from $995 in 2016—a fifty percent increase in just three years.

31.    In sum, the increase in Defendants' Destination Charges over the past decade has not and is not correlated with the actual increase in costs of shipping.  That is why other automakers "destination fees" have not increased at the same pace during this same ten-year period.  Audi, BMW, Infiniti, Lexus, Lincoln, Mercedes-Benz and Volvo each grew their fees by less than 20 percent over the past decade.

32.    Defendants use their informational advantage—they know exactly what it costs to ship vehicles to their "destination"—to exploit consumers, knowing full well that consumers have no way of verifying or even estimating what it costs to send a vehicle from one side of the country to another.

33.    It was reasonable for Plaintiffs to understand that separate line item called "Destination Charge" bore a reasonable relation to the shipping costs for the vehicle.  Indeed, that is the very reason for a specially designated line-item charge.  While consumers understand a lump sum price can include anything—including profit—the same is not true for line items.  Line items

are intended to inform consumers of the reason they are being charged. For that reason, consumers do not generally expect line-item costs to include hidden profit.

34. Federal law also supports this reasonable assumption. The Federal Automobile Information Disclosure Act requires manufacturers to disclose on the Monroney sticker "the amount charged to the dealer for the transportation of the car to the place of delivery." Reasonable consumers believe that the dealer pays the actual costs of delivery, and not a charge that has no correlation to the costs of transporting the vehicle to the dealership.

35. It is precisely because of this reasonable consumer understanding that other major industry participants routinely disclose that their "destination fees" are largely comprised of profit, not the actual cost of shipping. Indeed, Toyota, for example, labels its destination fee as a "Delivery, Processing and Handling Fee" and explains on its website that "Toyota may make a profit on the Delivery, Processing and Handling Fee." Defendants make no such disclosure.

36. Instead, Defendants omit critical information concerning the Destination Charge. Defendants never disclose that the Destination Charge far exceeds the actual costs it pays to transport their vehicles to dealers. Further, Defendants do not disclose the methodology (if there is one) in calculating the Destination Charge. In truth, Defendants devised, implemented, and arbitrarily set the amount of the Destination Charge without any intent to actually recover the true costs of shipping their vehicles.

37. Defendants' conduct is likely to mislead consumers acting reasonably under the circumstances, as is evidenced by Plaintiffs' experience, as described herein.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Fraudulent Concealment Tolling

38.    Defendants have known that profit is included in their Destination Charge since at least 2015, and has concealed from, or failed to, notify Plaintiffs and Class members of the full and complete nature of the Destination Fees.  Defendants continue to conceal the fact that profit is included in their Destination Charge to this day.

39.    Any applicable statue of limited has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### B.    Estoppel

40.    Defendants were, and are, under a continuous duty to disclose to Plaintiffs and Class members the true nature of their Destination Charge.  Defendants actively concealed—and continues to conceal—the true nature of their Destination Charge and knowingly made misrepresentations about the nature of the Destination Charge.  Plaintiffs and Class members reasonably relied upon Defendants' knowing affirmative representatives and/or active concealment of these facts.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

### C.    Discovery Rule

41.    The causes of action alleged herein did not accrue until Plaintiffs and Class members discovered that their Class Vehicles' Destination Charge contained profit.

42.    Plaintiffs and Class members had no realistic ability to discern that the Class Vehicles' Destination Charge included profit because of Defendants' active concealment of that fact.

43.     Thus, Plaintiffs and Class members were not reasonably able to discover the fact that Defendants' Destination Charge included profit until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that fact.

## VI.     CLASS ALLEGATIONS

44.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

45.     The proposed classes are defined as:

> All consumers who, during the applicable statute of limitations, purchased or leased a Class Vehicle in the state of New York and paid a Destination Charge (the "New York Class").

> All consumers who, during the applicable statute of limitations, purchased or leased a Class Vehicle in the state of New Jersey and paid a Destination Charge (the "New Jersey Class").

46.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

47.     Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

48.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendants' records.

10

49.    The claims of the representative Plaintiffs are typical of the claims of the Class she seeks to represent in that the representative Plaintiffs, like all Class members, was charged improper and deceptive fees as alleged herein.  The representative Plaintiffs, like all Class members, have been damaged by Defendants' misconduct in that they have been assessed deceptive Destination Charges.  Furthermore, the factual basis of Defendants' misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

50.    There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

51.    Among the questions of law and fact common to the Class are whether Defendants:

a.    Misrepresented the cost of transporting the Class Vehicles to their dealerships;

b.    Violated the consumer protection acts of certain states through their misrepresentations and omissions regarding the Destination Charge;

c.    The proper method or methods by which to measure damages, and

d.    The declaratory and injunctive relief to which the Class are entitled.

52.    Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful conduct.  Plaintiffs have suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

53.    Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

54.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.

55.    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

56.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

57.    Defendants have acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

58.    All conditions precedent to bringing this action have been satisfied and/or waived.

## VII.    CAUSES OF ACTION

### COUNT I

### Violation of New York General Business Law, N.Y. Gen. Bus. Law § 349
### (On Behalf of the New York Class)

59.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

60.    Plaintiff Cregory Cole (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the New York Class.

61.    Plaintiff and the New York Class members are "persons," and Defendants are "persons," "firms," "corporations," or "associations," within the meaning of New York General Business Law ("NYGBL"), N.Y. GEN. BUS. LAW §349(h).

62.    NYGBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW §349.

63.    In the course of their business, Defendants violated NYGBL by knowingly misrepresenting and/or intentionally concealing material facts regarding the true nature of their Destination Charge. Specifically, in marketing, offering for sale/lease, and selling/leasing the Class Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by NYGBL:

a.    Defendants misrepresented material facts, pertaining to the sale and/or furnishing of the Class Vehicles to the New York Class by misrepresenting their Destination Charge; and

b.    Defendants omitted, suppressed, and concealed the material fact that their Destination Charge contained profit.

96.    Defendants' scheme and concealment of the true nature of the Class Vehicles were

material to Plaintiff and the New York Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the New York Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiff and the New York Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

97. Plaintiffs and the New York Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

98. Defendants had an ongoing duty to Plaintiff and the New York Class members to refrain from unfair and deceptive practices under the NYGBL in the course of their business. Specifically, Defendants owed Plaintiff and the New York Class members a duty to disclose all the material facts concerning the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed such material facts from Plaintiff and the New York Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

99. Defendants systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New York Class.

100. Defendants willfully engaged in such acts and practices, and knew that it violated NYGBL § 349 or showed reckless disregard for whether they violated NYGBL § 349.

101. As a direct and proximate result of Defendants' deceptive, misleading, and unlawful acts and practices, Plaintiff and members of the New York Class have paid an inflated Destination Charge. Accordingly, Plaintiff and members of the New York Class have suffered ascertainable loss and actual damages.

102.    Pursuant to N.Y. GEN. BUS. LAW §349, Plaintiffs and the New York Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the New York GBL.

## COUNT II

### Violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1
### (On Behalf of the New Jersey Class)

103.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

104.    Plaintiff Kimberly Enright (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and the New Jersey Class.

105.    Defendants, Plaintiff, and the New Jersey Class members are "persons" within the meaning of N.J. STAT. ANN. §56:8-1(d).

106.    Defendants are engaged in "sales" of "merchandise" within the meaning of §56:8-1(c) and (e).

107.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. STAT. ANN. §56:8-2.

108.    In the course of their business, Defendants violated the New Jersey CFA by knowingly misrepresenting and/or intentionally concealing material facts regarding the true nature

of their Destination Charge.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by the New Jersey CFA:

a.  Defendants misrepresented material facts, pertaining to the sale and/or furnishing of the Class Vehicles to the New Jersey Class by misrepresenting their Destination Charge; and

b.  Defendants omitted, suppressed, and concealed the material fact that their Destination Charge contained profit.

109.  Defendants' scheme and concealment of the true nature of the Class Vehicles were material to Plaintiff and the New Jersey Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the New Jersey Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiff and the New Jersey Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

110.  Plaintiffs and the New Jersey Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

111.  Defendants had an ongoing duty to Plaintiff and the New Jersey Class members to refrain from unfair and deceptive practices under the New Jersey CFA in the course of their business.  Specifically, Defendants owed Plaintiff and the New Jersey Class members a duty to disclose all the material facts concerning the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed such material facts from Plaintiff and the New Jersey Class members, and/or they made misrepresentations that were rendered misleading because they

were contradicted by withheld facts.

112.    Defendants systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New Jersey Class.

113.    As a direct and proximate result of Defendants' deceptive, misleading, and unlawful acts and practices, Plaintiff and members of the New Jersey Class paid an inflated Destination Charge. Accordingly, they have suffered and will continue to suffer actual damages.

114.    Plaintiff and New Jersey Class Members are entitled to relief including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

115.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and members of the New Jersey Class suffered injury and/or damages, including the payment of an inflated Destination Charge.

116.    As a result of Defendants' violations of the New Jersey CFA, Plaintiff and each member of the New Jersey Class have paid an inflated Destination Charge.  Accordingly, Plaintiff and members of the New Jersey Class have suffered ascertainable loss and actual damages.

117.    Accordingly, Plaintiff and New Jersey Class members are entitled to relief under New Jersey CFA, including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

118.    As a direct and proximate result of Defendants' deceptive, misleading, and unlawful acts and practices, Plaintiff and members of the New Jersey Class suffered injury and/or damages, including the payment of an inflated Destination Charge.  Accordingly, Plaintiff and members of the New Jersey Class have suffered ascertainable loss and actual damages.

119.    Pursuant to N.J. STAT. ANN. §56:8-19, Plaintiff and the New Jersey Class members

17

seek an order awarding damages, treble damages, and any other just and proper relief available under the New Jersey CFA.

## COUNT III

### Unjust Enrichment
### (On Behalf of the Classes)

120.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

121.    To the detriment of Plaintiffs and the Classes, Defendants have been, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein.

122.    Plaintiffs and the Classes conferred a benefit on Defendants when they paid Defendants Destination Charges that they were misled into believing were the actual costs of shipping the vehicle from the manufacturer to the dealership, without the inclusion of profit.

123.    Defendants unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

124.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

125.    Plaintiffs and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendants as a result of their inequitable conduct as more fully stated herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

a)    Declaring Defendants' Destination Charge policies and practices described herein to be misleading and wrongful;

b)    Restitution by to Plaintiffs and the Class in an amount to be determined at trial;

18

c)    Disgorgement of the ill-gotten gains derived by Defendants from their misconduct;

d)    Actual damages in an amount according to proof;

e)    Punitive and exemplary damages;

f)    Pre-judgment interest at the maximum rate permitted by applicable law;

g)    Treble damages, statutory damages, and attorneys' fees as provided by law;

h)    Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

i)    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  May 4, 2021                              Respectfully submitted,

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**

*/s/ Jason H. Alperstein*
Jason H. Alperstein
Jeff Ostrow (*pro hac vice to be filed*)
Jonathan Streisfeld (*pro hac vice to be filed*)
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
alperstein@kolawyers.com
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey D. Kaliel (*pro hac vice* to be filed)
Sophia Gold (*pro hac vice* to be filed)
**KALIEL GOLD PLLC**
1100 15th St. NW, 4th Floor
Washington, D.C. 20005
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

19